# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| SAFECO INSURANCE COMPANY OF AMERICA, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | Case No. 4:19CV890 HEA |
| JESSE YOUNT, et al., | ) ) | |
| Defendants. | ) | |

## OPINION, MEMORANDUM AND ORDER

This declaratory judgment action seeks a declaration that policies of insurance from Safeco Insurance Company of America do not cover an underlying state court lawsuit against its insureds, Defendants James Yount, Paula Yount, and Jesse Yount. Defendant Deidre Pickens moves to dismiss [Doc. No. 20] requesting that the Court abstain from hearing Plaintiff's declaratory judgment action and dismiss Plaintiff's Amended Complaint. Plaintiff opposes the Motion. For the reasons set forth below, the Motion to Dismiss will be denied.

## Facts and Background

For the purpose of this motion to dismiss, Plaintiff's allegations are taken as true. Plaintiff alleges:

This declaratory judgment action presents a real and present case and controversy. On December 5, 2018, Defendant Deidre Pickens ("Pickens") filed a

civil action for wrongful death in the Circuit Court of St. Louis County, Missouri (the "State Court Action") against Defendants Jesse Yount, James Yount, and Paula Yount (collectively, the "Younts"). In her state court petition, Pickens alleges that her son Christopher Ryan Pickens ("Christopher") died of a fentanyl overdose at the home of the Younts on August 5, 2017. At the time of Christopher Pickens' death, Jesse Yount resided with his parents, James and Paula Yount, a married couple, at their home located at 4068 Tera Bera Drive, Florissant, Missouri (the "Yount Residence"). In the State Court Action, Pickens alleges that Christopher was invited to the Yount Residence. Pickens alleges that while at the Yount residence, "one or more of the [Younts] distributed and/or administered fentanyl" to Christopher, who became intoxicated with fentanyl, resulting in his death. Pickens alleges Christopher's death resulted from the "intentional, reckless, and/or negligent" acts or omissions of the Younts. Pickens alleges that the Younts failed to contact emergency response personnel for approximately ten minutes after discovering Christopher had overdosed on fentanyl. In the State Court Action, Pickens asserts additional claims for negligence, assault and battery, and seeks to recover Christopher's medical expenses, Christopher's survival claim for pain and suffering prior to his death, funeral and burial expenses, her loss of Christopher's care, companionship, services, and support, as well as punitive damages.

The Homeowners Policy

2

Plaintiff issued to James Yount a policy of homeowners insurance, Policy No. OX6271730, with a policy period of February 7, 2017 to February 7, 2018 and a $300,000 per occurrence limit of liability for personal liability (the "Homeowners Policy"). The Homeowners Policy defines "insured" to include "the 'named insured' shown in your Policy Declarations; and if a resident of the same household[,] the spouse" and "so long as [the named insured and/or spouse] remain a resident of the residence premises, the following residents of the residence premises: relatives [of the named insured and/or spouse.]" James Yount is the named insured shown in the Declarations of the Homeowners Policy. Paula Yount, as the spouse of James Yount residing in the same household, is an insured under the Homeowners Policy. Jesse Yount is an insured under the Homeowners Policy by virtue of being a relative of James Yount residing in his household.

The Homeowners Policy's insuring agreement provides liability coverage for the insureds "If a claim is made or a suit is brought against any insured for damages because of bodily injury or property damage caused by an occurrence to which this coverage applies." The Homeowners Policy defines "occurrence" to mean "an accident . . . which results in: [ ] bodily injury." The Homeowners Policy excludes from coverage any bodily injury:

> [W]hich is expected or intended by any insured or which is the foreseeable result of an act or omission intended by any insured; This exclusion applies even if:

>    (1) such bodily injury or property damage is of a different kind or degree than expected or intended; or
>    (2) such bodily injury or property damage is sustained by a different person, or persons, than expected or intended.

The Homeowners Policy also excludes from coverage any bodily injury "which results from violation of criminal law committed by, or with the knowledge or consent of any insured. This exclusion applies whether or not any insured is charged or convicted of a violation of criminal law." The Homeowners Policy also excludes from coverage any bodily injury:

> arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s) as defined by the Federal Food and Drug Law at 21 U.S.C.A. Sections 811 and 812. Controlled substances include but are not limited to cocaine, LSD, marijuana and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders licensed physician.

The Umbrella Policy

Plaintiff also issued to James Yount an umbrella insurance policy, Policy No. UX6339170, with a policy period of February 7, 2017 to February 7, 2018 and a $1,000,000 limit of liability (the "Umbrella Policy"). The Umbrella Policy defines "insured" to include "the 'named insured' shown in the Policy Declarations; and if a resident of the same household[,] the spouse" and "any family member," where "'Family member' means a person related to [the named insured and/or spouse] by blood, marriage, civil union, domestic partnership or adoption whose principal place of residence is the same as [the named insured

4

and/or spouse]. James Yount is the named insured shown in the Declarations of the Umbrella Policy. Paula Yount, as the spouse of James Yount residing in the same household, is an insured under the Umbrella Policy. The Umbrella Policy contains a "Named Person Exclusion," which provides:

> It is agreed no insurance is afforded under this policy for any loss or occurrence arising out of the activities of: JESSE YOUNT[.]

Jesse Yount is not an insured under the Umbrella Policy by virtue of the Named Person Exclusion.

Under the heading "Coverages: Personal Liabilty," the Umbrella Policy provides, "We will pay the ultimate net loss in excess of the retained limit that the insured is legally responsible for because of covered bodily injury, personal injury or property damage caused by an occurrence." The Umbrella policy defines "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the coverage period, in: (1) bodily injury; or (2) property damage." An "ultimate net loss" is defined as:

> a. "Ultimate net loss" means the amount paid or payable in settlement of the loss for which any insured is held liable by:
>    (1) court judgment; or
>    (2) compromise involving our written consent.
> All recoveries and salvage collected will be deducted from this amount.
> b. "Ultimate net loss" does not include:
>    (1) loss expense or legal expenses (such as attorney's fees and
>       court costs);

(2) salaries of employees; or
(3) office expenses incurred by any insured, us, or any underlying carrier.

"Retained limit" means either:

a. the limit of liability specified in the Schedule of Underlying Insurance of the Declarations for each underlying policy, plus the limit of any other underlying insurance collectible by the insured; or
b. the amount shown under retained limit in the Declarations, as the result of an occurrence not covered by underlying policies of insurance.

The Umbrella Policy defines "underlying insurance" as "insurance policies providing the insured with primary liability coverage meeting or exceeding the required minimum limits. The types of policies and the required minimum liability limits are listed in the policy Declarations."

The Umbrella Policy also includes several exclusions from coverage. The Umbrella Policy excludes "bodily injury, personal injury or property damage: . . . arising out of a criminal act or omission committed by or with the knowledge or consent of any insured, except those violations of a motor vehicle law." The Umbrella Policy also excludes from coverage:

> bodily injury or property damage arising out of any act or damage which is expected or intended by any insured, or which is the foreseeable result of an act or omission intended by any insured, which causes bodily injury or property damage. This exclusion applies even if:
> a. such bodily injury or property damage is of a different kind or degree than expected or intended;

> b. such bodily injury or property damage is sustained by a different person, persons or property than expected or intended.

The Umbrella Policy also excludes from coverage bodily injury, personal injury or property damage:

> arising out of the use, sale, manufacture, delivery, transfer or possession by any person of a controlled substance(s). Controlled substances include but are not limited to cocaine, LSD, marijuana, phencyclidine (PCP), methamphetamines and all narcotic drugs. However, this exclusion does not apply to the legitimate use of prescription drugs by a person following the orders licensed physician.

<u>Declarations Sought by Plaintiff</u>

The Younts have made demand on Plaintiff for defense and indemnification with respect to Pickens' claims. Plaintiff is currently incurring the ongoing expense of defending its insureds James, Paula, and Jesse Yount in the State Court Action, pursuant to a reservation of Plaintiff's rights under the policies. Thus, according to Plaintiff, a real and present case and controversy is presented.

Plaintiff seeks declaratory judgment as to five counts. First, Plaintiff seeks a declaration that the policies afford no coverage for the State Court Action's claims because Pickens' loss was not caused by an "occurrence." Second, Plaintiff seeks a declaration that the policies exclude coverage pursuant to their "controlled substances" exclusions. Third, Plaintiff seeks a declaration that the policies exclude coverage pursuant to their "expected or intended" injury exclusions. Fourth, Plaintiff seeks a declaration that the policies exclude coverage pursuant to

their "criminal acts" exclusions. Fifth, Plaintiff seeks a declaration that the Umbrella Policy excludes coverage for Jesse Yount pursuant to its "named person exclusion."

Pickens argues that this Court should exercise its discretion under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), to abstain from adjudicating the instant action. For the reasons set forth below, the Court finds that abstention is not warranted.

## Discussion

Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, federal courts "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." §2201(a). The Supreme Court has ruled that this statute is "an enabling Act, which confers a discretion on the courts rather than an absolute right upon the litigant." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (internal quotations omitted) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). While "generally, a federal district court must exercise its jurisdiction over a claim unless there are 'exceptional circumstances' for not doing so," *GEICO Cas. Co. v. Isaacson*, 932 F.3d 721, 724 (8th Cir. 2019), "a federal district court is afforded greater discretion in determining whether to exercise jurisdiction over a declaratory judgment action than in other circumstances," *Scottsdale Ins. Co. v. Detco Indus.*,

Inc., 426 F.3d 994, 999 (8th Cir. 2005). However, the district court's discretion with respect to declaratory judgment actions is limited when no parallel proceedings are pending in state court, because in those circumstances there are less-pressing interests of practicality and wise judicial administration. *Scottsdale*, 426 F.3d at 999. The Eight Circuit therefore employs a six-factor test in determining whether a district court should exercise jurisdiction over a declaratory judgment action where no parallel proceedings in state court are pending. *Id.* Defendant Pickens asserts that abstention is warranted by the six-factor test. Plaintiff argues the contrary.

The six *Scottsdale* factors considered in making an abstention determination are: (1) whether the declaratory judgment sought will serve a useful purpose in clarifying and settling the legal relations in issue; (2) whether the declaratory judgment will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the federal proceeding; (3) the strength of the state's interest in having the issues raised in the federal declaratory judgment action decided in the state courts; (4) whether the issues raised in the federal action can more efficiently be resolved in the court in which the state action is pending; (5) whether permitting the federal action to go forward would result in unnecessary entanglement between the federal and state court systems, because of the presence of overlapping issues of fact or law; and (6) whether the declaratory judgment

action is being used merely as a device for procedural fencing--that is, to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable. 426 F.3d. at 998 (internal citations and quotations omitted).

The first and second factors weigh heavily in favor of Plaintiff. The very controversy giving rise to the federal proceeding is whether Plaintiff must indemnify the Younts in the State Court Action. The declaratory judgment action will serve its purpose in settling the legal relationship, i.e. obligations, between Plaintiff, the Younts, and Pickens and will therefore also terminate the uncertainty underlying this action. The case relied on by Pickens to support her argument that the first and second factors weigh in her favor, *Safe Auto Ins. Co. v. Escabusa*, No. 2:15-CV-04224-NKL, 2016 WL 1090646, at *4 (W.D. Mo. Mar. 18, 2016), is distinguished from the case at bar in that the state court action and federal action in *Escabusa* both concerned coverage and indemnification under certain insurance policies. No such overlapping issues of insurance coverage are present here.

Federal courts regularly adjudicate issues of state law, particularly state contract law. In the case Pickens cite to support her contention that Missouri has an interest in applying state law, the federal court abstained because the plaintiff asked it "to rule on a substantive issue of state law [that was] currently before the Circuit Court of Johnson County, Missouri." *Permanent Gen. Assurance Corp. v.*

*Sheridan*, No. 4:18-CV-00481-NKL, 2018 WL 4762133, at *3 (W.D. Mo. Oct. 2, 2018). This case presents no issues of state law, i.e. interpretation of the policy contracts, that are also pending before a state court. Missouri has no special interest in resolving the policy dispute now properly before this Court, thus the third factor weighs in Plaintiff's favor.

Pickens contends that the issues of foreseeability and causation exist and overlap in the State Court Action and this action, resulting in the fourth and fifth factors weighing in her favor. She claims that this Court's failure to abstain would "require both courts to resolve those issues separately" and risk unnecessary entanglement between the state and federal court systems. Plaintiff asserts that it can prevail on the coverage issues on a motion for judgment on the pleadings based on allegations and admissions of Pickens made in the State Court Action petition, with no factual determinations being necessary to resolve this case. The Court, which is now familiar with the facts and issues relevant to the coverage issues, finds it highly unlikely that a loss efficiency or unnecessary entanglement will result from hearing the instant action in this Court. The fourth and fifth factors therefore weigh in Plaintiff's favor.

Finally, the Court notes that there is no other pending litigation that would determine insurance coverage and, therefore, no procedural fencing or forum

shopping to determine the best venue for a coverage determination. The sixth factor weighs in Plaintiff's favor.

The Court finds that all six *Scottsdale* factors favor hearing Plaintiff's declaratory judgment action in this Court. Accordingly, abstention is not warranted at this time.

## Conclusion

Defendant Pickens' motion to dismiss was steeped solely in the doctrine of abstention. Based upon the foregoing analysis, the Court will not abstain from hearing this action. Therefore, Pickens' motion to dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant Diedre Pickens' Motion to Dismiss [Doc. No. 20] is **DENIED**.

Dated this 26th day of November, 2019.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE